May Term,
1855.

CECIL
v.
MIX.

———————

CECIL *v.* MIX and Others.

A blank indorsement of a note, in the absence of evidence showing when it was made, will be presumed to have been made at the date of the note.

*A.* and *B.*, of *Lafayette*, being indebted to *C.*, who resided in a different county, *C.* sent to an agent at *Lafayette* a request to secure the debt. The agent returned a note (which was made payable at the *Lafayette* branch of the state bank) signed by *A.* and *B.* and indorsed in blank by *D.* There was no other evidence of the date of the indorsement. *C.* having afterwards indorsed his name in blank below *D.'s*, delivered the note to the plaintiff. *Held*, that *D.* was to be regarded as one of the makers.

Friday,
June 15.

ERROR to the *Tippecanoe* Circuit Court.

STUART, J.—Assumpsit on a promissory note averring, as to *Mix*, that he became one of the makers by signing his name on the back. The averment is, that on the day

and year on which the note was made, at, &c., the defen-
dant *Mix* signed his name in blank on the back, and that so
signed the note was delivered to the payee, *John P. Baker.*
*Baker* subsequently assigned to *Cecil.* Trial by the Court.
Finding and judgment for the defendants. ·The evidence
is all properly embodied in the record.

The evidence of *John P. Baker*, the payee, introduced
as a witness for and released by *Cecil*, so far as it bears
on this point, is brief, viz., "that he was the payee of the
note; that *Thompson* and *Rowan* owed witness a debt for
that amount for lumber; that the witness, living in ano-
ther county, sent to one *Halliday*, of *Lafayette*, to secure
the debt for him; that *Halliday* returned the note to wit-
ness, with the names of *Thompson* and *Rowan* and said
*James Mix*, the same as they now appear thereon.

The note and indorsements read thus, viz.:

"$259. *Lafayette, February* 7, 1849. Four months from
date, we promise to pay *John P. Baker* two hundred and
fifty-nine dollars, for value received, without benefit of va-
luation or appraisement laws; negotiable and payable at
*Lafayette* branch, state bank of *Indiana.* [Signed] *Thomp-
son* and *Rowan*." "Indorsed, *James Mix, John P. Baker*."

This was all the evidence bearing on that question.

The only question presented is as to the liability of *Mix.*
Was it primary or secondary? Was he one of the makers
of the note or only an indorser? The authorities on this
question were fully examined by judge *Dewey*, in *Wells
v. Jackson*, 6 Blackf. 40. According to the *Massachusetts*
authorities, the liability of *Mix* would be that of surety
on the original contract, as much as though his name had
been on the face of the note; but the presumption is open
to explanation as to the real intent of the indorsement.
In *New-York* such indorsement is held to be *prima facie*
evidence of secondary liability only, unless it be shown by
other evidence than the mere indorsement, that his object
was to give the maker of the note credit with the payee.

In regard to negotiable paper, this Court, in the case
cited, inclined to the latter principle. "The deduction,"
says the Court, "which we draw from these authorities is,

that the blank indorsement of unnegotiable paper, made at the date of the contract, and unexplained by extrinsic testimony, confers upon the payee the authority to hold the indorser liable on the original contract as a surety; and that a similar unexplained indorsement of negotiable paper, renders the indorser liable only as indorser, with the ordinary rights and privileges incident to that character; but that, in either case, the liability intended to be assumed may be explained, and the *prima facie* responsibility be changed to one of another kind."

Adhering to the principles thus established, it but remains to inquire how they affect the liability of *Mix*.

There are two circumstances which seem to define the position of *Mix* beyond controversy. It is shown in evidence that when the note was delivered to the payee, and before the latter had assigned it to *Cecil*, *Mix's* name was indorsed thereon. There is no date to the indorsement, and the presumption therefore is, in analogy to assignments, that it was done at the date of the note.

There is nothing in the case to repel this presumption. This blank indorsement of a note negotiable under our statute, R. S. 1843, p. 576, s. 6, (and much more under the authority of *Wells* v. *Jackson*, if the instrument were not negotiable,) made at the date of the note and before its delivery, sufficiently indicates, we think, the intention of *Mix* to give the other makers credit with *Baker*, the payee.

The other circumstance is closely connected with the time and manner of signing. It is the position of his name. The note and indorsements are set out in the record; as to the latter thus indorsed, "*James Mix, John P. Baker*." In the case of *Wells* v. *Jackson*, the principles of which we adopt in the determination of this case, *Jackson's* name stood the last of three indorsers. And the Court lay stress upon this fact, as a ground of presumption that he had "placed his name on the bond in the character of an ordinary indorser—looking to the responsibility of those whose names preceded his, including the payee and maker." Here *Mix's* name stands first on the back of the note. Taking these two circumstances together, the time

the indorsement was made and the position of the indorsement itself, leaves, we think, no doubt of the intention of *Mix*, the indorser, and of *Baker*, the payee, as to the liability assumed by *Mix*. *Baker* had every reason to regard him as a party to the original contract. *Cecil*, the assignee, has properly so regarded him in this action.

We are clearly of opinion that the evidence, in the light of the authorities cited, shows the liability of *Mix* to be of this primary character, and that therefore the judgment should be reversed.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded, &c.

*G. S. Orth* and *E. H. Brackett*, for the plaintiff.

*R. C. Gregory* and *R. Jones*, for the defendants.