Rosenthal v. Rambo.

## ROSENTHAL v. RAMBO ET AL.

[No. 3,950.   Filed January 28, 1902.]

BILLS AND NOTES.—*Negotiability Destroyed.*—The negotiability of a promissory note is destroyed by a clause therein "that without notice the payee or holder may extend the time of payment of the principal." *p. 269.*

SAME.—*Assignment.*—*Defenses.*—*Notice.*—The right to defend against a note in the hands of a third person under §277 Burns 1901 is limited to defenses existing at the time or before notice of the assignment. *pp. 269, 270.*

SAME.—*Indorsement.*—*Presumption.*—Where a note is indorsed in blank, without date, it will be presumed that the transfer was made on the date of the note. *p. 270.*

SAME.—*Defenses.*—*Pleading.*—Where the maker of a promissory note sets up a defense against the note in the hands of an assignee, the burden rests upon him to show by his pleadings that it was acquired before notice of the assignment. *p. 270.*

SAME. — *Assignment.* — *Contract Between Original Payee and Makers.* — Where the original payee of a promissory note entered into a contract with the makers after assignment of the note, and notice thereof to makers, extending the time of a guaranty of the consideration, the rights of the assignee are not affected thereby. *pp. 271, 272.*

From Marion Superior Court; *J. L. McMaster*, Judge.

Action by Moses Rosenthal against G. H. Rambo and others on a promissory note. From a judgment for defendants, plaintiff appeals. *Reversed.*

*F. E. Gavin, T. P. Davis, J. L. Gavin, I. W. Christian* and *W. S. Christian*, for appellant.

*J. A. Roberts* and *M. Vestal*, for appellees.

COMSTOCK, C. J.—This was an action brought by the appellant to recover upon a note of $400, executed by the other appellees to J. Crouch & Son, and by Crouch & Son, before maturity, for value, sold and assigned to appellant. The execution of the note was not denied. The issues were formed by answers of the defendants and reply thereto, and cross-complaints of the defendants and answer thereto. The answer to the complaint was in four paragraphs. The first paragraph was that the note was given without any consideration. The second paragraph sets up that the various makers of the note in 1896 entered into a partnership for breeding and stock raising purposes, under the firm name and style of the Noblesville German Coach Horse Company, and on the 18th day of June, 1896, in said firm name, they purchased of Crouch & Son a stallion for breeding and stock raising purposes, and for no other purpose whatever; that in payment for said horse they executed the note sued on, together with two other and additional notes for the sum of $800 each, neither of which was due at the bringing of this suit; that the consideration for the stallion was $2,000, and said notes were executed and delivered to said Crouch & Son in payment for said horse and for no other purpose or consideration; that at the time of said purchase, to wit, June 18, 1896, said Crouch & Son executed and delivered to said firm a guaranty in writing that said horse would be a satisfactory breeder, which guaranty is as follows: "We have this 18th day of June, 1896, sold the imported German coach horse 'Ferdinand,' German No. 225, American No. 885. We guarantee said horse to be a satisfactory breeder to the said 'Noblesville German Coach Horse Company' of Noblesville, county of Hamilton, State of Indiana, provided he has proper care and exercise. If said stallion should fail to be a satisfactory breeder to the

said company, the said stallion must be returned to us here at Lafayette, Ind., April 1, 1897, in as sound and healthy condition as he now is. J. Crouch & Son. P. S.—If said horse should fail to be a satisfactory breeder to the said company, and we could not agree upon said horse, we agree to let them pick a man and we pick a man, and if they should not agree let them select a third man and let them select said horse for said company. J. Crouch & Son." That said horse was not satisfactory as a breeder during the season of 1896; that he was bred to twenty mares and only four colts were foaled; that said horse had proper care and exercise during the season of 1896; that prior to March 27, 1897, they notified said Crouch & Son that said horse was not a satisfactory breeder, and that on said March 27, 1897, said Crouch & Son made to them the following proposition, being contained in a letter to D. A. Barker, one of the members: "If you think he (said horse meaning) hasn't been as you like him, and would like to try him this season, we will extend our guarantee another year, or if you think he won't, we will exchange with you. Hope this will be satisfactory." That they accepted this proposition to extend the guaranty another year and agreed to try said horse for the season of 1897, and notified said Crouch & Son of said acceptance by letter, and they retained and tried said horse in the season of 1897 in accordance with said agreement; that during the season of 1897 it was bred to thirty-nine mares and that out of said number only thirteen living colts foaled; that the horse was kept in Noblesville from June 18, 1896, to November 24, 1897, and during all said time had proper care and exercise as required by the terms of said guaranty, but he did not either in the season of 1896 or in the season of 1897 prove satisfactory as a breeder, but failed in a large majority of cases in each season to get colts, of all of which facts said Crouch & Son had full knowledge; that on the 24th of November they delivered said horse to said Crouch & Son at Lafayette, who received and have ever

since retained possession of him; that at the time of the delivery they notified Crouch & Son that they were ready and willing to select another horse as provided by the terms of the guaranty, and ready to select a man to act for them if necessary, but Crouch & Son wholly failed, neglected and refused to furnish another horse to these defendants in the place of the one returned to them and they have not, since said horse was received by them, complied, or attempted to comply, with the terms of said guaranty on their part.

The third and fourth paragraphs set up the formation of the partnership and its purposes, and the business of Crouch & Son who were furnishing and selling stallions for breeding purposes, and that they had knowledge of the purposes of the firm purchasing; that the agreed price of the horse was $2,000 and the note in suit was executed as a part of such price and the execution of the other notes for the remainder, and give more in detail the matters of defense upon which appellees, the makers of the note, rely. The cross-complaint is likewise in four paragraphs. These correspond closely to the same numbered paragraphs of the answer, although with some variations.

Paragraph one sets out that the said parties on the 18th day of June, 1896, executed to the defendants Crouch & Son their three promissory notes of which the one sued on is one. The notes had all been sold and delivered to the plaintiff Rosenthal; and had been executed without any consideration; that the suit had been commenced on one and had been threatened on the others and they asked that they be canceled and ordered delivered up. The second, third, and fourth paragraphs demand damages for $2,500 and so nearly correspond to the paragraphs of like numbers of the answer that it seems unnecessary further to set them out. The appellant's separate demurrer to the second, third, and fourth paragraphs of the answer for want of facts was overruled. Demurrer to each paragraph of the cross-complaint for want of facts was also overruled. The cause was put at

Rosenthal *v.* Rambo.

issue by answer in three paragraphs to the cross-complaint and reply in three paragraphs to the second, third, and fourth paragraphs of answer.

The first, second, third and fourth specifications of error challenge the sufficiency of the second, third and fourth paragraphs of the answer of the appellee except of the Crouchs, and the fifth, sixth, seventh, eighth and ninth specifications question the sufficiency of the first, second, third, and fourth paragraphs of the cross-complaint. Each paragraph of the answer and of the cross-complaint, except the first of each, pleads the contract of Crouch & Son, already set out; it is also averred that the appellees received said horse under this contract, and that prior to March 27, 1897, they notified the Crouchs that the horse was not satisfactory and on that Crouch & Son made the proposition heretofore set out, extending their guaranty another year. Counsel for the appellant insists that each of the foregoing paragraphs are bad on demurrer, because they seek to set up against appellant, the assignee of the note, a defense arising out of matters not shown to have occurred before they received notice of the assignment to appellant.

Although the note in suit is payable at a bank in this State, its negotiability under various decisions is destroyed by the clause, "that without notice the payee or holder may extend the time of payment of the principal" etc. *Merchants', etc., Bank* v. *Fraze,* 9 Ind. App. 161, 53 Am. St. 341. The note not being governed by the law merchant, the appellant took it subject to, and charged with, all the equities and defenses existing against it, before notice of the assignment. The right to defend against a note in the hands of a third party is given by the statute with limitations; "and all actions by the assignee shall be without prejudice to any set-off or other defense existing at the time of or before notice of the assignment" etc. §274 Burns 1894. It is those defenses had before notice of the assignment which may be set up against the assignee. *Sayres* v. *Linkhart,* 25

Ind. 145; *Goldthwait* v. *Bradford*, 36 Ind. 149; *Huston* v. *First Nat. Bank*, 85 Ind. 21; *Weader* v. *First Nat. Bank*, 126 Ind. 111. *Shade* v. *Creviston*, 93 Ind. 591, was a suit on note by an assignee; plea that note was given for the purchase money of a sawmill, which defendant was induced to buy by reason of fraudulent representations, and that he had made a settlement of the controversy, with the payee, before the notice of assignment. The plea is said by the court to be good because, "it shows an accord and satisfaction prior to the notice of the assignment," and that such evidence is available against the assignee because it is shown to have existed before notice of the assignment.

The averments of the complaint show the transfer to the appellant, but not the date. The indorsement being in blank without date, the law raises the presumption that the transfer was made on the date of the note, namely, June 18, 1896. *Ewing* v. *Sills*, 1 Ind. 125; *Bates* v. *Prickelt*, 5 Ind. 22, 61 Am. Dec. 73; *Cecil* v. *Mix*, 6 Ind. 478; *Dawson* v. *Vaughan*, 42 Ind. 395; *Patterson* v. *Carrell*, 60 Ind. 128.

Where the maker sets up a defense against the assignee the burden rests upon him to show by his pleadings that it was acquired before notice of the assignment. This is directly decided in *Sayres* v. *Linkhart*, 25 Ind. 145. In the course of the opinion in said cause it is stated: "This is a question of pleading and not of evidence. The right of the set-off is governed by the statute, which provides that, 'Whatever defense or set-off the maker of any such instrument had, before notice of the assignment, against an assignor, or against the original payee, he shall have also against their assignees.' 2 G. & H. 658, §3. The answer shows that the note for $732, claimed as a set-off, was assigned to the defendant after the assignment of the note sued on to the plaintiff, and hence the necessity that the defendant should, by averment, negative notice of the assignment at the date of the assignment to him of the note

presented as a set-off. The averment is a negative one, not perhaps in the power of the defendant to prove, and therefore the *onus* of proving notice is thrown on the plaintiff, if he would defeat the set-off. It was not intended by this court to decide, in *Rawlings* v. *Fisher*, 24 Ind. 52, as a rule of pleading, that the burden of showing notice of the assignment is on the plaintiff. That question was not involved. The defense arose at the time of giving the note sued on and went to its consideration. The dictum that 'the burden of showing notice is on the plaintiff', is true as a rule of evidence, but it is not true as a rule of pleading."

The further objection is made to these paragraphs of the answer and of the cross-complaint that the extension of the time for the trial of the horse was a material alteration of the original contract which could not affect the rights of the assignee, and in fact was the making of a new contract. Appellees had against this notice in the hands of the assignee such rights as belonged to them under the original contract. The right of the appellant could not be affected by any new contract made without his knowledge or consent.

In *Coster* v. *Griswold*, 4 Edw. Ch. 364, it is said: "And where an assignee takes in good faith, his right to hold will not be disturbed or devested by any subsequent event or after accruing right or equity of the debtor. *Chance* v. *Isaacs*, 5 Paige 592. All that the court of law or equity can do in such cases, since they recognize and protect the rights of assignees of choses in action, is, to allow them always to take, subject always to any defense legal or equitable, which existed in favor of the debtor against the original holder or creditor at the time of the transfer or assignment." The court further holds that a defense arising out of failure to perform collateral contracts, in connection with which the notes were given, could not be set up as a defense unless default had been made and the defense actually available before the assignment had.

In *Johnson* v. *McLane*, 7 Blackf. 501, 43 Am. Dec. 102, Johnson traded a mare to Swope for a horse represented to be sound with the privilege of trying him and returning in a specified time if he did not work well. After the time fixed Johnson returned him to Swope and demanded that he rescind. Swope complied and they reëxchanged. In the meantime McLane acquired a lien by execution against Swope and against the mare. It was held that whether there was a warranty, conditional sale, or false representation, Johnson had not exercised his right to return within the time prescribed by law or by the contract, and that Swope's subsequent acquiescence in his demand for rescission and his thereby waiving the terms of the contract or the right the law vested in him, did not affect the third party whose right had intervened.

When Crouch & Son, on March 27, 1897, extended the terms of their guaranty, they did not own notes and could not relieve the appellees from the provisions of the contract which they were required to perform in order to effect their defense against Rosenthal, unless appellees acted upon Crouch & Son's waiver in ignorance of Rosenthal's rights. The averments of the answer and the cross-complaint do not negative this ignorance.

It is not necessary to consider the other specifications of error. The judgment is reversed, with instructions to sustain the demurrer to the second, third and fourth paragraphs of answer and to the several paragraphs of the cross-complaint.