The City National Bank of Kansas City, Missouri, v. Gunter Brothers.
No. 13,131.  (72 Pac. 842.)

The City National Bank of Kansas City, Missouri, v. George D. French & Son.
No. 13,132.  (72 Pac. 842.)

SYLLABUS BY THE COURT.

1. Promissory Note—*Negotiability.*  Embodied in a promissory note was the provision: "The makers and indorsers hereby severally waive protest, demand, and notice of protest and non-payment, in case this note is not paid at maturity, and agree to all extensions and partial payments before or after maturity without predjudice to holder."  *Held,* that the note was not negotiable.

2. ——— *Chattel Mortgage—Defense in Replevin.*  When such

note is secured by a mortgage on cattle and the note and mortgage are transferred by the payee to another, after which the cattle are sold by the mortgagor and the price thereof transmitted to, and received by, the original payee of the note, without notice to the purchaser of the transfer of the same, such purchaser can make the same defenses against an action of the transferee for the possession of the mortgaged cattle as he could have made if the action had been brought by the original payee and mortgagee.

Error from Butler district court; G. P. AIKMAN, judge. Opinion filed June 6, 1903. Affirmed.

*Milton Moore*, and *Hamilton & Leydig*, for plaintiff in error.

*Leland & Harris*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: These were actions of replevin brought tor ecover cattle formerly owned by Ed. Noble, in Butler county, and which were sold by him to Gunter Brothers and George D. French & Son. Prior to the sales of the cattle Noble gave to the Goodloe-McClelland Commission Company a promissory note for $7433.88 and at the same time executed a chattel mortgage on the cattle in question to secure the payment of the debt. The following is a copy of the note:

"$7433.88.        KANSAS CITY, KAN., May 29, 1900.

"One hundred and eighty-two days after date, without grace, for value received I promise to pay to Goodloe-McClelland Commission Co., or order, seven thousand four hundred thirty-three and 88-100 dollars, at the office of Goodloe-McClelland Commission Co., Kansas City, Kan., with interest from maturity at eight per cent per annum.

"The makers and indorsers hereby severally waive protest, demand, and notice of protest and non-payment in case this note is not paid at maturity, and agree to all extensions and partial payments before or after maturity, without prejudice to holder.

(Signed)        ED. NOBLE."

The mortgage given to secure the note provided that until default, or until possession should be taken by the mortgagee, the mortgagor should retain possession of the property, and also contained this further provision : ·

"When marketed, the consent of the second party having been first obtained, said property shall be consigned to the second party at the Kansas City stockyards, Kansas City, Kan., or Kansas City, Mo., and the proceeds applied to the payment of the above-mentioned indebtedness, the surplus being paid to the first party.   If said cattle, or any part thereof, be consigned or sold elsewhere than above, then said mortgagee shall pay a commission of fifty cents per head on all the above-described cattle."

Before the maturity of the note and mortgage the same were sold and transferred to the City National Bank of Kansas City, Missouri.   On August 16, 1900, Noble sold forty-two head of steers to Gunter Brothers, and on the 18th day of August, 1900, a check corresponding with the amount received for the cattle was forwarded by Noble to the commission company ; but it applied the proceeds to the payment of other indebtedness, secured by another mortgage which Noble had given to that company.   Noble likewise sold sixty-nine head of the cattle to George D. French & Son on November 9, 1900, and their draft for $2360 was forwarded to, and received by, the commission company and applied in payment of another mortgage given by Noble to the commission company.

No part of the money paid on the sales of the cattle was received by the City National Bank of Kansas City, Missouri, the holder of the note for $7433.88 and the mortgage given to secure the same.   The bank then brought these proceedings in replevin against the purchasers of the cattle, claiming the same under its mort-

gage.    Upon issues joined a trial was had, and the plaintiff having offered its evidence, the court sustained demurrers thereto, and gave judgment for the defendants in each case.

The principal, and perhaps the controlling, question in the cases arises on the negotiability of the note transferred from the commission company to the bank.    If the note and mortgage on which the bank bases its claim are non-negotiable, the purchasers of the cattle can make the same defenses that Noble could have made as against a claim of the commission company.    If he had been called upon by the commission company to account for cattle sold by him, he could have responded that he had remitted the proceeds of the sales to the company and, as it had appropriated the proceeds, it mattered not whether it had one or several chattel mortgages on the cattle sold.    By the terms of the mortgage Noble was authorized either to ship the cattle to the company or, if he should sell them elsewhere, to pay to the company a commission of fifty cents per head on the cattle sold.    The sale of the cattle by Noble and the receipt and appropriation of the proceeds of such sales by the commission company were substantially the same as if Noble had shipped the cattle to Kansas City and the defendants had bought them from the commission company and brought them back to Butler county.

Assuming, then, that the paper was not negotiable, in the absence of evidence that the purchasers of the cattle had any notice of the assignment and transfer of the paper, the same defenses were open to them that would have been if the actions had been brought by the commission company.    The important question, then, for our determination is whether the note upon which the plaintiff founds its right possesses the character and advantages of commercial paper.

It is said to lack the element of certainty as to time of payment because of the provision embodied therein that "the makers and indorsers hereof hereby   .   .   . agree to all extensions and partial payments before, or after maturity, without prejudice to holder." An essential requirement of negotiable paper is certainty as to time of payment.   In the note in question payment is first fixed at 182 days after the date, but, as will be observed, a later provision makes the time indefinite by stipulating that it may be changed and extended either before or after maturity.   If the time is to remain fixed until maturity when another time is to be fixed by the parties, or if payment is made to depend upon events which necessarily must occur and the time of payment is ultimately certain, other considerations would arise ; but here payment is not ultimately certain, for the time named in the paper is subject to change at any time at the volition of some of the parties to the paper.

Our attention is called to *Killam v. Schoeps*, 26 Kan. 310, 40 Am. Rep. 313, where the note under consideration contained a like provision ; but an examination of that case shows that the attention of the court was not drawn to this provision, and its effect upon the negotiability of the paper was not considered or determined.   A case in point is *Glidden v. Henry*, 104 Ind. 278, 1 N. E. 369, 54 Am. Rep. 316, where the note was payable twelve months after date, but contained a provision that the time of payment might be extended indefinitely as the payee or his assigns might see fit.   The court remarked :

"From inspection of the note, it is impossible to tell when it may mature, because it is impossible to know what extension may have been, or may hereafter be, agreed upon.   No definite time is fixed, nor is the maturity of the note dependent on an event that must

inevitably happen. The condition is not that something may happen, or be done, that will mature the note before the time named, thus leaving that time as fixed and certain, if the thing do not happen, or be not done ; but the condition is that the time named may be displaced by another uncertain and indefinite time, as the parties may agree.''

A note containing a similar clause was before the supreme court of Iowa, and it was held that because the time of payment was uncertain, and was not capable of being made certain, the law did not regard it as negotiable paper. In the course of the opinion it was said :

''Notes, which by their terms are payable on or before a fixed time or a specified event, are, it is true, uncertain as to the time at which they are payable. But there is no uncertainty as to the time when they become absolutely due. Paper of this character is regarded by the courts as negotiable. But the note before us may never fall due, for payment may be extended indefinitely.'' (*Woodbury, Williams & English v. Roberts*, 59 Iowa, 348, 13 N. W. 312, 44 Am. Rep. 685.)

In *Coffin v. Spencer*, 39 Fed. (C. C.) 262, a promissory note containing a clause which authorized the extension of the time of payment from time to time as often as required was before the court, and it was there said :

''Every successive taker of the paper is, of course, bound to take notice of the stipulation, and, instead of looking only to the face of the instrument for the time of its maturity, as in the case of commercial paper he must, is put upon inquiry whether or not any agreement for a renewal or extension of time has been made by his proposed assignor or by any previous holder.''

The conclusion of the court was that a stipulation

Bank v. Gunter.

which required a party to inquire into extrinsic facts in order to ascertain when the paper was payable destroyed its negotiability. The supreme court of Michigan, in *Second National Bank v. Wheeler*, 75 Mich, 546, 42 N. W. 963, determined that a stipulation in a note to the effect that the payee or holder might extend the time of payment without notice, and without prejudice to his rights against makers, sureties, and indorsers, took from the instrument its negotiable character. See, also, *Lamb v. Story*, 45 Mich. 488, 8 N. W. 87; `First National Bank v. Carson*, 60 id. 432, 27 N. W. 589; *Oyler et al. v. McMurray*, 7 Ind. App. 645, 34 N. E. 1004; *Rosenthal v. Rambo*, 28 id. 265, 62 N. E. 637; *Citizens' N. Bank v. Piollet*, 126 Pa. St. 194, 17 Atl. 603, 4 L. R. A. 190, 12 Am. St. Rep. 860.

The authorities are not uniform as to the proper test of the negotiability of a note, but we think that the correct rule has been stated in those that have been cited. The time of payment in the instrument in question was contingent and uncertain and depended on the future action of the parties, which no one could anticipate. The case of *Clark v. Skeen*, 61 Kan. 526, 60 Pac. 327, 49 L. R. A. 190, 78 Am. St. Rep. 337, is cited as an authority to sustain the negotiable quality of the note in controversy. There payment of the note was to be made at a fixed date, but there was a provision in it to the effect that default in the payment of interest would make it mature at an earlier time. That case is plainly distinguishable from the one under consideration. There the time of payment was ultimately certain, although by certain agreed conditions it might be matured before that time. Here the time of payment depends on the future agreement of the parties. No one can tell from an inspection of the instrument itself when it may

mature, as it cannot. be known what extension may have been or may hereafter be agreed upon. We therefore conclude that the uncertainty of the time of payment is fatal to the negotiability of the instrument.

The same defenses were therefore open to the purchasers of the cattle that would have been if the actions had been brought by the commission company, and as that company received the proceeds of the sale of the cattle, and in effect sanctioned the sales, the lien thereon was extinguished and they are precluded from reclaiming the cattle so sold. It is unnecessary therefore to consider the matter of the description of the cattle in the mortgage or the other questions which have been discussed by counsel.

It follows that the judgment in each case must be affirmed.

All the Justices concurring.