THE ROSSVILLE STATE BANK, *Appellant*, V. J. M.
HESLET, *Appellee*.

No. 16,910.

SYLLABUS BY THE COURT.

PROMISSORY NOTE—*Negotiability—Time of Payment*.   A prom-
issory note, otherwise in negotiable form, contained the fol-
lowing provision: "The makers and indorsers of this note
hereby severally waive presentment for payment, notice of
payment, protest and notice of protest, and all exemption that
may be allowed by law, and valuation and appraisement laws
waived, and each signer and indorser makes the other an
agent to extend the time of this note."   It is *held*, that the
note is not a negotiable instrument.

Appeal from Shawnee district court.   Opinion filed
March 11, 1911.   Affirmed.

*George H. Whitcomb*, and *Clad Hamilton*, for the
appellant.

*J. B. Larimer*, for the appellee.

The opinion of the court was delivered by

BENSON, J.:   This action is upon a promissory note,
payable to the order of J. M. Heslet, on January 1,
1909, containing the following clause:

"The makers and indorsers of this note hereby sev-
erally waive presentment for payment, notice of pay-
ment, protest and notice of protest, and all exemption
that may be allowed by law, and valuation and ap-
praisement laws waived, and each signer and indorser
makes the other an agent to extend the time of this
note."

The question for decision is whether the note is a
negotiable instrument.   It is conceded that if the note
is negotiable the plaintiff should recover, and that if it
is not the judgment for the defendant was right.

It is contended that the element of certainty in time
of payment necessary in commercial paper is destroyed

by the stipulation for extension. An instrument to be negotiable "must be payable on demand, or at a fixed or determinable future time." (Laws 1905, ch. 310, § 8, Gen. Stat. 1909, § 5254.) An instrument is payable at a determinable future time "which is expressed to be payable: (1) At a fixed period after date or sight; or (2) on or before a fixed or determinable future time specified therein; or (3) on or at a fixed period after the occurrence of a specified event which is certain to happen, though the time of happening be uncertain. An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect." (Laws 1905, ch. 310, § 11, Gen. Stat. 1909, § 5257.)

In *Bank v. Gunter,* 67 Kan. 227 (followed in *Sykes v. Bank,* 69 Kan. 134, 78 Kan. 688), it was held that a note was not negotiable because of the following clause:

"The makers and indorsers hereby severally waive protest, demand, and notice of protest and nonpayment, in case this note is not paid at maturity, and agree to all extensions and partial payments before or after maturity without prejudice to holder." (Syl. ¶ 1.)

The negotiable instruments law did not apply in the Gunter case (Laws 1905, ch. 310, § 6, Gen. Stat. 1909, § 5252), but the provisions of that statute to which we have referred are only declaratory of the law merchant. Adhering to the views expressed in that case, they must, if applicable, govern the controversy here. In that case the makers and indorsers agreed to all extensions before or after maturity; here signer and indorsers make each other an agent to extend the time. Interpreting "signer" to mean maker, and the agency of each maker and indorser to act for the other as equivalent to a consent to the action of either to an agreement for extension made by another, the only material difference discernible is that in the Gunter case the note stated that the extension might be made

before or after maturity, while in this case it authorizes the extension without stating when it may be made.    The precise inquiry suggested is whether the authority to extend here given may be exercised only after maturity.    If so, the time is fixed for payment, for the promise, apart from this clause, is to pay on January 1, 1909, and an authority to extend afterward would only amount to a waiver of the right to be relieved from liability for an extension without such authority.    If, however, the clause is to be construed as giving the parties named the right to extend the time before maturity, its effect would be precisely the same as though the words "on or before" had been inserted, and the rule of the Gunter case would apply. Counsel for the bank say:

"At most the clause in question can only be construed to give authority to the parties named to 'extend' the time of payment at or after maturity by an agreement to be then made.    That is what the word 'extend' means."

To extend is to stretch, or stretch out.    (Webster's New Inter. Dict.)  As here used, it means that the time of payment may be lengthened to a date beyond that stated in the instrument.    Extension of time of payment rests in contract, and the contract may be made before as well as after maturity, unless some restriction is expressed or is to be implied from the terms used.    Thus the parties to a lease for one year may agree before the end of the term that it shall be extended for another year, and this may be done ordinarily in any contract or transaction involving a fixed period of time.    The general authority given in this instrument is to extend the time for payment, each signer and indorser being made an agent of every other to do this.  It is not stated that this shall be done only at maturity or after maturity, and it is not perceived why such a restriction should be implied, and no precedent is cited for such a rule.    Indeed, it would

seem that extensions in such cases would ordinarily be made before the note falls due, in order to prevent the impairment of credit, and to avoid inconveniences that might arise from disappointed expectations of receiving payment.

It is argued, however, that the opinion in the Gunter case warrants the interpretation claimed by the appellant. The clause relied upon is:

"If the time is to remain fixed until maturity, when another time is to be fixed by the parties, or if payment is made to depend upon events which necessarily must occur and the time of payment is ultimately certain, other considerations would arise." (67 Kan. 231.)

While it was said that other considerations would arise if the time of payment remained fixed until maturity of the note, it was not suggested that the right to an extension before the time of payment stated in the note had elapsed depended on the words "before or after maturity" in the clause giving such right. Nor is such a conclusion to be inferred from the language used. In reading the cases cited in the opinion referred to, it will be found that in all or nearly all of them the instruments under consideration gave the right to extend in general terms, without stating when it should be exercised, and the distinction now contended for was not suggested. In *Oyler et al. v. McMurray,* 7 Ind. App. 645, cited on page 233 of the Gunter case, the clause was that "the drawers and indorsers severally waive . . . all defenses on the ground of any extension of the time of its payment . . . given by the holder or holders." (pp. 647, 648.) The Indiana court said: "This . . . evidently means . . . before or after January 1, 1888"—the date of maturity. (p. 648.) This seems to be the construction placed upon the general authority to extend, as given in the other cases cited.

In *Woodbury, Williams & English v. Roberts,* 59 Iowa, 348, also cited in the Gunter case (p. 232), the

stipulation was that "the makers and indorsers . . . agree that the payee or his assigns may extend the time of payment," etc.   The Iowa court said: "The note before us may never fall due, for payment may be extended indefinitely."   (p. 349.)   If, however, extensions could be made only after maturity, the objection that it might never fall due would have no foundation, for it would necessarily fall due before an extension could be made.

The vice of the stipulation in question is that the day of payment can not be determined.   The signer (maker) or any indorser may, at any time he sees fit to do so, as agent one for another, extend the time for payment by agreement with the holder.   The payee, in transferring the note, may become an indorser, and therefore an agent for the maker, and his indorsee may in turn become an indorser, with like power, so that the time of maturity must be indefinite, and not determinable from the instrument.   As stated in *Coffin v. Spencer,* 39 Fed. 262, also cited at page 232 of the Gunter case:

"Every successive taker of the paper is, of course, bound to take notice of this stipulation, and, instead of looking only to the face of the instrument for the time of its maturity, as in case of commercial paper he must, is put upon inquiry whether or not any agreement for a renewal or extension of time has been made by his proposed assignor or by any previous holder." (p. 263.)

In a note in 17 Ann. Cas. 55 the cases upon the general subject of certainty in time of payment of negotiable paper are collated, including *Bank v. Gunter,* 67 Kan. 227.   The cases are also collated in a note in 125 Am. St. Rep. 199.   Many of these authorities are discussed in exhaustive briefs furnished by the parties here.   There is a distinct line of cleavage between cases holding in harmony with *Bank v. Gunter* and those in other jurisdictions holding that stipulations

like the one contained in that case are not fatal to negotiability. No useful purpose would be served by reviewing these cases here. The opposing views upon this question are clearly stated in the majority and minority opinions in *First National Bank v. Buttery,* 17 N. Dak. 326, 332.

The plaintiff calls attention to the statute declaring that the negotiable character of an instrument is not affected by a provision which "waives the benefit of any law intended for the advantage or protection of the obligor." (Laws 1905, ch. 310, § 12, Gen. Stat. 1909, § 5258.) By applying this waiver to subdivision 6 of section 127 of the same statute (Gen. Stat. 1909, § 5373, subdiv. 6), providing for the release of parties secondarily liable by extensions given without their consent, it is argued that the maker is bound. These provisions are not novelties in commercial law. But the plaintiff's contention overlooks the fact that the question to be determined in this case is whether the instrument is a negotiable promissory note; and this depends on whether it has the element of certainty in time of payment necessary in commercial paper. It is not a question of the waiver of the right of an obligor upon a negotiable instrument to be released by an extension of time given without his consent, but whether there is such an instrument. Simple contracts, although for the payment of money, can not be transformed into commercial paper by mere waiver.

The court is satisfied that the rule it has adopted, and followed in the cases first referred to, is sustained by the weight of authority and by the better reasoning. The formal essentials of a negotiable instrument are so simple and so generally known that there is little reason for the insertion of debatable provisions. To encourage experiment in this field would tend to uncertainty in a matter which ought, as far as pos-

sible, to be free from doubt.  As observed by Mr. Chief Justice Gibson, in *Overton v. Tyler*, 3 Pa. St. 346:

"A negotiable bill or note is a courier without luggage.  It is a requisite that it be framed in the fewest possible words, and those importing the most certain and precise contract; and though this requisite be a minor one, it is entitled to weight in determining a question of intention."   (p. 347.)

The same court, by Mr. Justice Sharswood, in *Woods v. North*, 84 Pa. St. 407, said:

"It is a necessary quality of negotiable paper that it should be simple, certain, unconditional, not subject to any contingency.  It would be a mere affectation of learning to cite the elementary treatises and the decided cases which have established this principle.  It is very important to the commercial community that it should be maintained in all its rigor."   (p. 409.)

The importance of avoiding stipulations in commercial paper like the note under consideration is also emphasized in *Woodbury, Williams & English v. Roberts*, 59 Iowa, 348.

After a careful consideration of this important and interesting question we are satisfied that the plaintiff's contention rests upon a repudiation or modification of the rule declared in the Gunter case, rather than upon the denial of its application.

The judgment is affirmed.