No. 19,077.

WILLIAM M. NELSON, *Appellee,* V. HILAND SOUTHWORTH et al., *Appellants,* and MINNIE L. WILCOX, *Appellee.*

SYLLABUS BY THE COURT.

1. NOTES AND MORTGAGES—*Procured through Concealment and Misrepresentation—Cancellation Ordered.* S. loaned to N. $2500, taking a principal note and mortgage for that amount and a note and mortgage for commissions. He transferred the principal securities to Mrs. W. but afterwards collected and transmitted to her the semiannual interest, until the last coupon was due. This was not paid, but he sent the amount to W. and held the coupon and the last annual installment on the commission note. Before the maturity of the debt, he notified N. that it would not be renewed but must be paid. Thereupon N. entered into negotiations with W. for an extension. Learning of this S. sent a check to W. for the full amount then due upon the principal note with a request that the papers be sent to him. Mrs. W. declined to accept the check and returned it. After sending the check and before its return, which was delayed by the absence of W. from home, S. prepared notes and mortgages for a renewal of the loan and presented them to N. and wife and told them that he had paid off the debt to W.; that W. had nothing to do with it; and that he (S.) had the papers in his possession and would return them on the execution of the prepared renewals.

Nelson v. Southworth.

Relying upon these representations N. and wife signed and delivered the new notes and mortgages to S. for $2500 and $187.50 respectively. Learning that S. had not taken up and did not have the old papers, which were still held by Mrs. W., N. tendered payment of the coupon and installment note still held by S., and demanded the cancellation of the new notes and mortgages. It is held that the findings of the district court that the new securities were obtained by a concealment of facts and false representations amounting to fraud, and should be canceled, are sustained.

2. NOTES AND MORTGAGE—*Plaintiff Not an Innocent Holder.* The holders of the new securities to whom S. had transferred them are held to have no better right than the payee—one of the notes being non-negotiable, and the other transferred by assignment only.

Appeal from Trego district court; JACOB C. RUPPEN-THAL, judge. Opinion filed December 12, 1914. Affirmed.

*E. C. Flood,* of Ellis, *G. W. Hurd, Arthur Hurd,* and *Bruce C. Hurd,* all of Abilene, for the appellants.

*Herman Long,* of Wa Keeney, for appellee William M. Nelson.

The opinion of the court was delivered by

BENSON, J.: The defendants appeal from a judgment canceling two notes, and mortgages securing them, made by the plaintiff and his wife to the defendant Southworth.

The following facts appear either from the undisputed evidence or are established by the findings and decisions of the district court. On January 1, 1907, the plaintiff borrowed $2500 from the defendant Southworth, and gave two promissory notes therefor, one for $2500, payable in five years with interest at 6 per cent per annum, payable semiannually, secured by mortgages on his farm of the same date, made by himself and wife. On the same date he gave to Southworth another promissory note for $187.50 secured by a second mortgage, referred to in the evidence as a commission mortgage. The $2500 note and mortgage were

assigned to Minnie L. Wilcox in the year 1910. Payments of interest were made to Southworth and by him transmitted to Mrs. Wilcox after she became the owner. In a few instances the remittances were made to her husband for her.

On December 20, 1911, Southworth wrote to the plaintiff:

"Your loan, principal $2500.00, and interest $87.50 will be due Jan. 1st. This money is due in our office at that date. Make your arrangements in ample time to get the money here by Jan. 1st. We could not possibly under any circumstances extend this loan."

On January 15, 1912, Southworth again wrote to the plaintiff:

"Your letter of Jan. 3rd. was duly received. You have been very slow in the payment of your interest and that is the reason I do not want to make you a new loan. Your interest which came due on Jan. 1st, is still unpaid. This now amounts to $88.20. Send this in by return mail."

About January 1 Mrs. Wilcox, who lives at Abilene, called up Southworth, whose office is in the same city, in regard to this loan, and was informed that Nelson was very slow and that he (Southworth) refused to renew the loan or to let the borrower have any more money. She then conferred with her husband, and afterward informed Southworth that she and her husband would take care of the loan, to which he responded "All right."

On March 27 Southworth went to the office of his agents, Ross & Waldo, at Ellis, in the vicinity of which the plaintiff resides, to close up a renewal of the loan, which he had in the meantime asked them to negotiate according to the terms of notes and mortgages he had sent to them for the plaintiff and his wife to execute. Upon the request of these agents the plaintiff and his wife came in, but objected to signing the papers for the reason that they had been negotiating with the Wilcoxes to renew or carry the loan. Southworth, however, in-

sisted that they should renew the loan with him, and stated to them that he had paid Wilcox off and had the papers in his possession at home, and that Wilcox did not have a thing to do with it; that he would return the papers by the next Saturday; and that the plaintiff must either fix up the papers then or he would foreclose. The plaintiff needed more money, and finally, on Southworth's agreement to let them have $700 more, he and his wife signed a note and mortgage for $2500 to be due in five years, and a note and mortgage for $700 due in two years, and a commission note and mortgage for $187.50, payable in annual installments, all bearing date January 1, 1912. These are the instruments which the plaintiff asks to have canceled. At the time of this transaction Southworth held a coupon for $68.75 due January 1, 1912, on the old $2500 note, and also the old $187.50 note on which $18.75 was due. He also claimed a credit for $25 on account of the difference between 6 per cent and 10 per cent on the old $2500 note after its maturity. It was the understanding that out of the proceeds of the new $700 note these items and the taxes should be paid and the balance should be turned over to plaintiff as soon as the abstract then in Southworth's possession at Abilene should be brought down to date. The transaction was to be closed at Ross & Waldo's office, the money or check to be sent there. Considerable delay occurred and correspondence followed between Southworth and his agents relative to an adjustment of the matter. Each party blamed the other for the delay, but the merits of that controversy need not be considered now. The proceeds of the $700 note were never paid to the plaintiff or sent to Ross & Waldo for him. Finally, on April 18, the plaintiff learned that Southworth did not have the $2500 note, and that it was still held by Mrs. Wilcox. The plaintiff then, on April 22, 1912, tendered payment of the coupon and installment on the old loan held by Southworth, and demanded a cancellation of the new notes and mortgages made on March 27. Southworth claimed

that he had paid or redeemed the old $2500 note, in this way: On or about March 18, 1912, he had received information that the plaintiff was in correspondence with Wilcox. Thereupon on that date he wrote to Mr. Wilcox at Manchester:

"Referring to the Nelson loan we are making this party a new loan through our agent at Ellis and I wish you would send me all of the papers. This loan has been drawing 10% since the 1st of Jan. and as I computed the interest up to today it amounts to $54.16 and I herewith enclose a check for the principal and interest, $2554.16."

The check referred to was enclosed in the letter. This is the explanation of his statement to the plaintiff when the new papers were made that he had paid off the old loan. He testified that his primary reason for doing this was to protect his prior lien for the coupon and installment, amounting to $87.50. He testified further:

"Q. And you want the court to understand that for the purpose of protecting a lien amounting to about ninety dollars, you paid up $2550.00 and made this trip out to Ellis? Ans. No, I was getting pay for making the new loan. I did n't put up the $2500.00 to protect that lien. You have n't got that right. No, that is n't it. I was making a new loan, and getting compensation for doing it. I was n't putting up the $2500.00 just to save that, but I was making a new loan."

When this check was received at Mr. Wilcox's office in Manchester he was absent and did not see it until March 25. He then called up his wife at Abilene, eighteen miles distant, and told her of its receipt, and she told him to return it, which he did on the same day. Sometime afterwards Southworth, still insisting that the check paid the $2500 note, again sent it to Mr. Wilcox, who again returned it. The Wilcoxes also refused to release the mortgage on Southworth's demand, but Mrs. Wilcox continued to hold the note and mortgage as her own property, and having extended the time of

payment, loaned to plaintiff $700 more, taking a new mortgage as security.

The $700 note taken on March 27 was indorsed by Southworth, the payee, to the defendant Bixby. The note is in the ordinary negotiable form except that it contains the following stipulation:

"If the interest be not paid when due to become as principal and bear the same rate of interest, payable semiannually. All endorsers, sureties, guarantors and assignors severally waive presentment for payment, protest and notice of protest, for nonpayment of this note and all defense on the ground of any extension of the time of its payment that may be given by the holder or holders, to them or either of them or to the maker or makers thereof."

The new $2500 note was not transferred by indorsement but was delivered to the defendant Otis upon this assignment:

"For value received I hereby assign and transfer the within note and coupons together with all my interest in and all my rights under the Mortgage Deed securing the same to   .   .   .   without recourse."

The district court made the following findings:

"The mortgage of date January 1, 1912, to Southworth, and the note which the mortgage was to secure, for $2500.00, were obtained by Southworth from Nelson, by a concealment of the facts and misrepresentation amounting to fraud upon Nelson. Southworth did not pay off the Wilcox note and mortgage of 1907, and his attempts to do so were ineffectual, and were not accepted.

"The Wilcox mortgage of 1907 for $2500.00 remains a valid lien upon the lands in controversy, and is the first and prior lien on the land.

"The $700.00 note and mortgage of Nelson to Wilcox of date April 13, 1912, are valid and are a second lien upon the premises subject only to the 1907 mortgage of $2500.00.

"The $700.00 mortgage of March 27, 1912, from Nelson to Southworth, was obtained in the same manner and by the same sort of fraud as the $2500.00 mortgage, and is invalid.

"In April, 1912, Nelson sent Southworth $90.25 payment of the last coupon of the 1907 first mortgage and the last installment on the second mortgage of the same date, which payment Southworth refused to accept.

"The second commission mortgage from Nelson to Southworth, of March 27, 1912, for $187.50, is also invalid for the same reasons as the other two mortgages between the same parties.

"All three mortgages from Nelson to Southworth that were executed on the 27th of March, 1912, for $2500.00, $700.00 and $187.50 respectively, should be cancelled of record.

"Otis and Bixby bought their respective notes from Southworth after this action was begun against Southworth. On the whole of the evidence, it does not appear that Otis and Bixby are innocent holders."

It is not necessary to discuss the contention of Southworth that as a lien holder he had a right to redeem from the first $2500 mortgage. The fact remains that he did not have the papers in his possession and control as he represented when he obtained the new securities, and could not and did not surrender them as he agreed to do. The surrender of the old securities was the consideration for the new ones for $2500 and $187.50. The agreement to furnish $700 more was a part of the renewal scheme and is affected by the same infirmity, and besides, it was never performed by the payment of the money. The plaintiff and his wife both testified that they believed the representations that the old note and mortgage had been paid by Southworth and were then in his possession, ready for surrender, and that relying upon these representations they executed the new papers, which they would not otherwise have done.

The findings of the district court that the new securities were obtained by concealment and false representations amounting to fraud are sustained by the evidence and support the judgment. As the notes were fraudulent in their inception the burden was upon the present holders to show that they were holders in good

faith. But conceding that the evidence was sufficient to show that they so held them, Mr. Bixby, the owner of the $700 note, is not protected because the instrument is not negotiable. The clause above quoted destroys that quality. (*Bank v. Gunter,* 67 Kan. 227, 72 Pac. 842; *Sykes v. Bank,* 78 Kan. 688, 98 Pac. 206; *Bank v. Heslet,* 84 Kan. 315, 113 Pac. 1052; Negotiable Instruments Law, §§ 8, 11, Gen. Stat. 1909, §§ 5254, 5257.)

The $2500 note of March 27 is not held by Mr. Otis by indorsement but by the assignment copied above. His rights are no greater than those of the payee. (*Hatch v. Barrett,* 34 Kan. 223, 8 Pac. 129; *Briggs v. Latham,* 36 Kan. 205, 210, 13 Pac. 129; Negotiable Instruments Law, §§ 37, 56, Gen. Stat. 1909, §§ 5283, 5302.)

The judgment is affirmed.