Bank v. Dickinson.

No. 21,326.

THE NATIONAL BANK OF WEBB CITY, MISSOURI, *Appellee,* v.
S. S. DICKINSON et al., *Appellants.*

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Makers Primarily Liable.* Those who sign a promissory note as makers are primarily liable thereon.

2. SAME—*Negotiability Not Destroyed.* A note signed by five joint makers contained this language:

"We, the makers, sureties, endorsers and guarantors of this note, hereby severally waive presentment for payment, notice of nonpayment, protest and notice of protest and consent that time of payment may be extended without notice thereof to any of the sureties of this note."

*Held,* that such note is negotiable.

3. SAME—*No Surety Indicated on Note.* Under the law as expressed in the negotiable-instruments act there was nothing on such note to indicate that any party thereto was a surety, and the quoted sentence was meaningless and did not render the instrument a courier impeded with luggage.

Appeal from Pawnee district court; ALBERT S. FOULKS, judge. Opinion filed March 9, 1918. Affirmed.

*F. Dumont Smith,* of Hutchinson, and *E. E. Glasscock,* of Larned, for the appellants.

*W. H. Vernon, W. H. Vernon, jr., J. S. Vernon,* all of Larned, and *Frank L. Forlow,* of Webb City, Mo., for the appellee.

The opinion of the court was delivered by

WEST, J.: The defendants appeal from a judgment rendered against them on a promissory note taken by the plaintiff for value before maturity in due course, the complaint being that it was nonnegotiable and subject in the hands of the plaintiff to the defense of failure of consideration.

The only question is the negotiability of the note, and this depends upon the proper construction of the following provision thereof:

"We, the makers, sureties, endorsers and guarantors of this note, hereby severally waive presentment for payment, notice of nonpayment, protest and notice of protest and consent that time of payment may be extended without notice thereof to any of the sureties of this note."

Following this are the five names of the makers.

The defendants argue that as the note was made and is payable in Kansas it is governed by our law, and that under the authority of *Bank v. Heslet,* 84 Kan. 315, 113 Pac. 1052, and *Nelson v. Southworth,* 93 Kan. 532, 144 Pac. 835, the quoted language renders the instrument nonnegotiable.

The plaintiff relies on section 6528 of the General Statutes of 1915, which requires, among other things, that the paper must be payable cn demand or at a fixed or determinable future time, and section 6531, which defines a determinable future time as a fixed period after date or sight, or on or before a fixed or determinable future time specified therein, or on or at a fixed period after the occurrence of a specified event which is certain to happen, though the time of happening be uncertain. (*Bank v. Hoffman,* 85 Kan. 71, 116 Pac. 239.) It is further contended that as there are no sureties on the note the clause providing for extension without notice to sureties is without effect.

While the quoted language mentions sureties, the form of the note would indicate that all the signers are makers. True, as held in *Water Power Co. v. Brown,* 23 Kan. 676, the form of the paper does not prevent inquiry, in an action between the parties liable thereon, as to who are principals and who sureties. But section 3 of the negotiable-instruments act provides that—

"The person primarily liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same." (Gen. Stat. 1915, § 6523.)

(See, also, Gen. Stat. 1915, § 6587; *Bank v. Bowdon,* 98 Kan. 140, 157 Pac. 429.)

In *Bank v. Gunter,* 67 Kan. 227, 62 Pac. 842, the makers and indorsers waived protest, demand, and notice, but also, in case it should not be paid at maturity, agreed to all extensions and partial payments before or after maturity, without prejudice to the holder, and the note was held to be not negotiable. The court said it lacked the element of certainty as to time of payment, and that the provision just referred to made the time indefinite by stipulating that it might be changed and extended either before or after maturity.

"If the time is to remain fixed until maturity when another time is to be fixed by the parties, or if payment is made to depend upon

events which necessarily must occur and the time of payment is ulti-
mately certain, other considerations would arise; but here payment is
not ultimately certain, for the time named in the paper is subject to
change at any time at the volition of some of the parties to the paper."
(p. 231.)

In that case the agreement to an extension was consented to
in advance by the makers and indorsers, while here the agree-
ment was only to the effect that the time-of payment might be
extended without notice to any of the sureties, which, of course,
did not cover makers, indorsers and guarantors, as distin-
guished from sureties. The case of *Bank v. Heslet,* 84 Kan.
315, 113 Pac. 1052, was under the negotiable-instruments
act. There the makers and indorsers waived presentment for
payment, notice, exemptions, valuation and appraisement, "and
each signer and indorser makes the other an agent to extend
the time of this note." (Syl.) It was said that the precise
inquiry was whether the authority to extend could be exer-
cised only after maturity; that if so, the authority to extend
would only amount to a waiver of the right to be relieved from
liability for an extension without such authority, but if it gave
the right to extend before maturity, it would be the same as if
the words "on or before" had been inserted. It was further
stated that this extension clause did not indicate whether the
extension should be made before or after maturity, and that
ordinarily it would be made before the note should fall due.

"The vice of the stipulation in question is that the day of payment
cannot be determined. The signer (maker) or any indorser may, at
any time he sees fit to do so, as agent one for another, extend the time
for payment by agreement with the holder." (p. 319.)

The Gunter case was approved and the note was held not
negotiable, not having "the element of certainty in time of
payment necessary in commercial paper." (p. 320.) In each
of these cases there was an express agreement to extend.

The note in the case now before us contains no agreement
to extend, except that the time of payment may be extended
without notice thereof to any of the sureties. If there be no
sureties, then of course there could be no notice to them.
Counsel argues that whenever it is necessary to examine into
the provisions of an instrument to see whether it is negotiable
or not its negotiability is lost, and that it was necessary in
this case to so examine, and that, as a matter of fact, each

maker is a surety for the various other makers in proportion as each was to divide up the stock for which the note was given. Section 6648 of the General Statutes of 1915 provides that a person secondarily liable is discharged.

"(6) by any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

In the cited case of *Bank v. Bowdon* it was held that a co-maker, although in fact a surety, is not released by an extension granted the principal in consideration of the payment of interest in advance. Speaking of the rule holding the surety liable it was said:

"It merely defines the obligation of one who upon the face of a negotiable instrument assumes unconditional liability. It requires a surety who is unwilling to bind himself, irrespective of any extension granted to a comaker, to refrain from signing a note as one of the makers. (p. 142.)

One of the two makers pleaded suretyship, want of consideration, and an extension by the other without her consent by payment of advance interest. While it was said that aside from the statute the same result would be reached, the surety was held liable by virtue of the negotiable-instruments act. Ruling Case Law lays it down that under the provisions relating to primary and secondary liability,

"A surety comes squarely within the definition of a person whose liability is primary, for he is, by the terms of the instrument, absolutely required to pay the same." (3 R. C. L., p. 1120, § 335.)

In *Mullendore et al. v. Wertz*, 75 Ind. 431, it was held that an extension agreement between the payee and one of two makers of a note, without the knowledge or consent of the other, who was a surety in fact but not known as such to the payee, did not have the effect to release the nonconsenting maker. The consideration in that case was the payment of advance interest.

Section 6648 provides that a person secondarily liable is discharged, among other things, by any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved. But as already seen, neither party to this note can be said to be

secondarily liable, for each is primarily liable. We then have a promissory note signed by five makers, each and all of whom are primarily liable for its payment, and by no one else, the signature of no other person or party appearing thereon. The provision that the time of payment may be extended without notice to any of the sureties and the recital that this is made by the sureties do not necessitate any examination or investigation, for the purpose of ascertaining by a purchaser in due course before maturity whether any party can, as to the holder, claim the right to mere suretyship, and hence the note is not rendered nonnegotiable or made into a courier impeded with luggage.

If all the makers agree in advance that the note may be extended, this amounts merely and only to the unnecessary consent that they may enter into a new contract when they get ready to do so. If they all agree that the note may be extended by some of them without notice to the others, this might, and probably would, mean that in case of a valid agreement for extension between the holder and such others those not entering into it would be bound thereby, because such provision would amount to a mere appointment in advance of the other makers to represent them in an extension agreement. But a stipulation by all the makers of the note, reciting that they and the sureties consent that it may be extended without notice to any of the sureties, does not amount to an agreement that it may be extended by any of the makers without consent of the others or to an appointment of any of them as agents to extend for such others. It is apparent that in this instance a blank note prepared for use when principals and sureties were to sign, was used, and hence the language which has caused this controversy became impractical and meaningless.

The judgment is affirmed.