No. 33,138

W. J. PIRTLE, as Trustee, Etc., *Appellee*, v. RICHARD JOHNSON, *Defendant*; CHRIS JOHNSON, *Appellant.*

(64 P. 2d 2)

Opinion filed January 9, 1937.

*Walter E. Hembrow,* of Council Grove, for the appellant.

*W. J. Pirtle,* of Council Grove, and *Joseph E. Lynch,* of Herington, for the appellee.

The opinion of the court was delivered by

BURCH, C. J.: The action was one to recover against the maker and endorser of an instrument in form a promissory note. The endorser's demurrer to the petition was overruled. He filed an answer, and judgment was rendered against him on the pleadings. He appeals.

On November 19, 1930, Richard Johnson executed and delivered to the Latimer State Bank the following instrument:

"LATIMER, KANS., Nov. 19, 1930.

"One year after date, for value received, I, or we, promise to pay to the order of

LATIMER STATE BANK, Latimer, Kansas

Thirty-nine Hundred Seventy-one and 27/100 Dollars with interest from date at the rate of 8 percent per annum, payable semiannually at their banking house. Ten percent interest after maturity.

"We, the makers, sureties, endorsers and guarantors of this note, hereby severally waive presentment for payment, notice of nonpayment, protest and notice of protest and diligence of bringing suit against any party thereto, and consent that time of payment may be extended without notice thereof to any of the sureties of this note. RICHARD JOHNSON."

Richard Johnson had been indebted to the bank for a long time, in approximately the amount of the instrument. Successive renewal notes had been given for the indebtedness and the instrument sued on was a renewal note. Chris Johnson signed his name on the back of the instrument.

The bank ceased to be a going concern, and W. J. Pirtle was elected trustee for the stockholders. As such, the instrument came into his hands, and as such, he brought suit against the Johnsons. Capacity of Pirtle to sue as trustee is not contested. Pirtle does not claim to be a holder by negotiation, and the same defenses may be interposed against him as if the action were one by the bank.

A defense raised by the demurrer to the petition and by the answer was that the instrument shows Chris Johnson was not obligated. Considering the instrument as negotiable, Chris Johnson was an endorser. (R. S. 52-217 (6), 52-604, 52-605.) It is contended the instrument was nonnegotiable.

Negotiability was not affected by the provision in the note relating to diligence in bringing suit, and it is not contended negotiability was affected by that provision. There were no sureties or guarantors. Nobody was concerned but the payee, the maker and the endorser. The statute fixed the time within which suit might be brought. No burden was imposed or privilege created with respect to any party to the instrument, and the diligence provision was nugatory.

Waiver in the instrument of presentment for payment, notice of nonpayment, protest and notice of protest, had no effect on negotiability. (R. S. 52-822; *Leach v. Urschel*, 112 Kan. 629, 632, 212 Pac. 111.) It is contended, however, the instrument was nonnegotiable because time of payment was rendered uncertain by the following provision:

"We, the makers, sureties, endorsers and guarantors . . . consent that time of payment may be extended without notice thereof to any of the sureties of this note."

Stripped of the provision relating to waiver of diligence in bringing suit, the instrument was in the exact form of the instrument

involved in the case of *Bank v. Dickinson*, 102 Kan. 564, 171 Pac. 636, which this court held was negotiable.

In the case of *Bank v. Dickinson*, the instrument was signed by five persons as makers. The instrument came into the hands of a bank, which sued the makers. The defense was want of consideration. The defense could not be urged if the bank were a holder in due course. The bank could not be a holder in due course if the instrument were nonnegotiable. Whether the note was nonnegotiable depended solely on whether the provision relating to consent to extension of time of payment without notice to sureties rendered time of payment uncertain. There were no sureties, and because consent to extension was tied in the same sentence to notice of extension to sureties, the recital was treated as if it read, "Time of payment may be extended as to sureties without notice to them." An interpretation contended for by Chris Johnson in this instance that consent to extension was given by the makers, endorsers and the guarantors was expressly rejected.

"In that case [*Bank v. Gunter*, 67 Kan. 227, 72 Pac. 842] the agreement to an extension was consented to in advance by the makers and endorsers, while here the agreement was only to the effect that the time of payment might be extended without notice to any of the sureties, which, of course, did not cover makers, endorsers and guarantors, as distinguished from sureties.

. . . . . . . . . . . . .

"It is apparent that in this instance a blank note prepared for use when principals and sureties were to sign, was used, and hence the language which has caused this controversy became impractical and meaningless." (*Bank v. Dickinson*, 102 Kan. 564, 566, 568, 171 Pac. 636.)

The decision is adhered to, and on the face of the paper Chris Johnson was an endorser of a negotiable instrument who waived presentment for payment, etc., and became liable on nonpayment of the note.

Even if the note were nonnegotiable, the irregular endorser would still be prima facie liable to the payee. The courts are not agreed as to the capacity in which an irregular endorser is liable. The weight of authority is, that his liability is that of joint maker, but the actual intention of the parties may be shown. (2 Daniel on Negotiable Instruments, 7th ed., 830; Bigelow on Bills, Notes and Checks, 3d ed., § 251; L. R. A. 1916D, 224; 79 A. L. R. 754.) Since in this instance the instrument was negotiable, the question need not be determined.

Chris Johnson's answer alleged he signed the instrument with-

out consideration to himself, and for the accommodation of the bank. The answer, however, narrated the facts of the transaction between Chris Johnson and the bank, and whether the numerous assertions that Chris Johnson signed the note for the accommodation of the bank were true is to be determined by the facts.

Richard Johnson was engaged in the garage business and, in the year 1925, borrowed from the bank on his own note approximately the sum of money represented by the note sued on. As indicated, the note sued on was given on November 19, 1930, was for $3,971.27, and was due November 19, 1931. The status of the indebtedness when suit was commenced is shown by the following endorsements appearing on the back of the note:

| DATE | PAID | BALANCE |
|---|---|---|
| 8-7-31 | 99.00 | 3,872.27 |
| 9-8-31 | 70.00 | 3,802.27 |
| Offset | 3.92 | 3,798.35 |
| 1-27-32 | 5.00 | 3,793.35 |
| 6-24-32 | 250.00 | 3,543.35 |

The judgment rendered on May 16, 1936, was for $5,064.09.

A year after the original note was given the cashier of the bank called Chris Johnson to the bank and had a conference with him. The cashier said the state banking department, through its examiners, was criticizing some of the bank's paper, including that of Richard Johnson, and the cashier requested Chris Johnson to sign Richard's note, "to make it look better for the bank." Thereupon, Chris Johnson signed Richard's note. The note sued on, endorsed by Chris Johnson, is a remote renewal of Richard's original note. What occurred when the note sued on was signed by Chris Johnson is not disclosed.

By signing Richard's criticized paper, Chris Johnson could make it look better for the bank in one of two ways: by acting discreditably and by acting honestly. Chris could deceive the bank examiners and falsify the bank's assets by making it appear two persons were liable on the note when, in fact, addition of the second name was "phony." The court prefers to interpret the facts as not warranting an inference that such a course was pursued. If it had been, Chris Johnson would still be liable. (*Hayes v. Addy,* 139 Kan. 481, 32 P. 2d 243.)

Without inducement by false representation, without independent promise to hold him harmless, and without wrongful intent,

Chris Johnson removed criticism of Richard's paper and made it look better for the bank and to the bank examiners by endorsing it. He thereby became a party to the note as endorser, and may not deny the natural and legal consequence of his conduct.

Chris Johnson asserts and repeats that he received no consideration for his endorsement. It is of the essence of accommodation paper that the accommodating maker or endorser receives no consideration. What Chris did was to lend his name to Richard, whose paper was under fire. (R. S. 52-306.) Richard could not, or at least did not, pay. With two names on the note, it was renewed again and again, and each renewal was for Richard's benefit. (*Swan Savings Bank v. Snyder*, 124 Kan. 827, 830, 262 Pac. 547.) It is of no importance that the bank was also benefited. (*Bank v. Watson*, 99 Kan. 686, 163 Pac. 637; *Kershaw v. Cozad*, 137 Kan. 128, 131, 19 P. 2d 452.)

The result of the foregoing is, the demurrer to the petition was properly overruled, the answer stated no defense, and judgment was properly rendered on the pleadings for Pirtle, as trustee.

The judgment of the district court is affirmed.