No. 28,793.

G. D. ROHR, *Appellee,* v. GEORGE A. JEFFERY, Receiver of THE
MIDWEST HAIL INSURANCE COMPANY, *Appellee* (J. B. SENECAL,
*Appellant*).

(278 Pac. 725.)

Opinion filed July 6, 1929.

*W. L. Sayers,* of Hill City, for the appellant.

*R. L. NeSmith,* of Wichita, for appellee G. D. Rohr. *E. P. Villepigue,* of
Wichita, for appellee George A. Jeffery.

The opinion of the court was delivered by

JOHNSTON, C. J.:   G. D. Rohr brought this suit upon a promissory note executed by J. B. Senecal, of Rooks county, payable to
the Midwest Hail Insurance Company, of Sedgwick county, which,
it is alleged, was indorsed and transferred by that company to the
plaintiff.  Payment was demanded of Senecal, and was refused by
him, and notice of the refusal was given to the insurance company.
Both of these parties were named as defendants.  Judgment was
given against Senecal and the receiver of the insurance company
for $100.78.  Senecal appeals.

The suit was brought in Sedgwick county, where service was obtained on George A. Jeffery, who had been appointed receiver of

the insurance company, and the summons was then sent to Rooks county, and served upon Senecal in that county. On July 25, 1928, he filed a motion to quash the service of the summons upon him on the ground that no cause of action was stated against the insurance company which had passed into the hands of a receiver, and that the company was only impleaded with him to enable plaintiff to institute an action against him in Sedgwick county instead of in Rooks county, where he resided, and that this was done in fraud of his rights "for the purpose of enabling the plaintiff to institute this action in Sedgwick county, Kansas, against the defendant, Senecal, a resident of Rooks county, Kansas." The case was called for trial on August 24, 1928, when no appearance was made by or for Senecal, but the other defendant was represented by counsel. The court held that legal service had been made upon both defendants, and upon evidence presented rendered judgment against both. Senecal appeared on November 14, 1928, and moved the court to sustain his motion to quash the summons. He was permitted to present the motion and after a hearing it was overruled. Senecal contends that judgment by default could not be rendered against him when the motion attacking the service was pending and undisposed of.

The motion to quash the service should have been heard and decided before entering a judgment by default. It is a general rule that a judgment by default cannot be entered while a motion challenging the legality of service of summons upon a defendant is pending unless the motion itself shows that it is frivolous or absolutely without merit. (34 C. J. 171.) It is said in behalf of plaintiff that he was unaware of the pendency of the motion when judgment was entered, and that he has no objections to giving defendant his day in court.

There was service upon the defendant in a county other than the one in which the action was brought and wherein judgment was rendered. Valid service was made upon the other defendant in Sedgwick county and if a cause of action was stated against that defendant there was authority to make service on Senecal in Rooks county. But if no cause of action existed against the codefendant, or if it was not brought into the case in good faith, and it was joined merely to obtain jurisdiction of Senecal, the court was without power to enter judgment against him. Whether jurisdiction of Senecal was obtained depends upon whether the note upon which

the action was brought is a negotiable instrument, and that a liability thereon existed against the insurance company. If the note was nonnegotiable and the transfer by the insurance company did not render it liable thereon, it was not a real party and the service upon Senecal in another county was unauthorized. The following is a copy of the instrument:

"$89.76.                                          ZURICH, KANSAS, June 2, 1927.

"On or before the first day of Sep., 1927, for value received, I promise to pay to the order of The Midwest Hail Insurance Company, at its office at Wichita, Kansas, the sum of ($89.76) eighty-nine and 76/100 dollars with interest at ten per cent from date, if not paid at maturity.

"To secure the payment of said sum of $89.76 and interest, I hereby mortgage unto said The Midwest Hail Insurance Company, or assigns, 90 acres of wheat now growing or to be grown on S. E. quarter of sec. 32, twp. 10, range 19, and —— quarter of sec. ——, twp. ——, range —— N, in the county of —— and state of Kansas, during the year 1927.

"And it is agreed that said sum of $89.76 and interest shall be a lien upon said crop until full payment is made. Said lien to be enforced as other lien on personal property, and it is further agreed that said sum shall become due at the time said crop shall be threshed. In case said crop shall be threshed before the first date above given, this note shall immediately become due and payable, and that no part of said crop will be mortgaged, sold or removed (except 25 per cent of the crop for the purpose of paying this note, harvesting and threshing expenses) from said premises until said debt is fully paid.

"I —— further state that there is no encumbrance against said wheat except (——) and that I own and have a good right to mortgage the same.

                                                    J. B. SENECAL.

"P. O. Address: Zurich, Rooks county, Kansas.

"(Indorsed on note) No. 6791. Agent: Lisenby & Stevens. Maker: J. B. Senecal. Postoffice: Zurich, Kansas."

It will be observed that the instrument contains a number of promises and stipulations other than to pay a single sum of money at a certain time. Besides the fact that more than one date of payment is stated, there are stipulations and promises as to a lien upon a crop, the threshing of the same, that no part of the crop shall be mortgaged, sold or removed by the promisor until the debt is paid; that one-fourth of it may be sold for the purpose of paying the harvesting and threshing expenses and also the payment of the note; and a further stipulation as to the title of the property, that is, that there is no encumbrance on the property and that the maker owns and has a good right to mortgage the same. In *Killam v. Schoeps*, 26 Kan. 310, it was said:

"It is essential to the negotiability of paper that there is in it but the single promise to pay money. You may not incorporate with such a promise stipu-

lations and agreements as to other matters, and then say that the absolute promise to pay money lifts the contract into the region of negotiable paper. This is the general rule, and whatever exceptions there may be, this is not one. In 1 Daniel on Negotiable Instruments, § 59, the rule is thus stated: 'In the sixth place, it is essential to the negotiability of the bill or note, that it purport to be *only for the payment of money*. Such at least may be stated to be the general rule, for if any other agreement of a different character be engrafted upon it, it becomes a special contract, clogged and involved with other matters, and has been deemed to lose thereby its character as a commercial instrument.' Now this instrument touches other matters and contains other stipulations and provisions than those respecting the payment of money. It is a contract in respect to the title to property. It is also a contract for the possession of property, and because of these additional stipulations it is something more than a simple promise to pay money." (p. 312.)

Manifestly the note contains stipulations which are foreign and distinct from the payment of money, and under the rule in the Killam case they are of such a character that it cannot be regarded as a negotiable instrument. See, also, *Bank v. Gunter*, 67 Kan. 227, 72 Pac. 842; *Bank v. Heslet*, 84 Kan. 315, 113 Pac. 1052; *Bank v. Hoffman*, 85 Kan. 71, 116 Pac. 239; *Bank v. Engler*, 112 Kan. 708, 212 Pac. 656. It is said that making the note due and payable if the threshing is done prior to the first date mentioned, and if no threshing was then done it would be absolutely due on the first date, would make the time of payment become certain. It is argued that where there is a fixed time of payment and the note is also made subject to a contingency of being payable upon the happening of a condition before the time of the absolute payment stated, it may be regarded as negotiable. The threshing is to be done at such a time as the maker chooses and not upon the option of the payee, but if the maker should attempt to sell or mortgage the property, the payee would be at liberty to enforce his lien and compel payment of the debt. There are authorities that where a note fixes a time of payment and also contains a provision that it may be paid at an earlier time, upon the option of the maker himself, it will not render the instrument nonnegotiable. (*Clark v. Skeen*, 61 Kan. 526, 60 Pac. 327.) But aside from the uncertainty as to the time of thresh.ng, there are so many other promises and stipulations in the instrument that it cannot be held to be negotiable.

As plaintiff had not set forth a cause of action against the insurance company or its receiver, and no judgment could be rendered against it, that defendant was not a proper or necessary party. Not being rightly brought in Sedgwick county, there was no warrant for

sending a summons to Rooks county, and the service of it upon Senecal there. His motion to quash the service should have been sustained.

The judgment is reversed and the cause remanded with directions to sustain that motion.