(137 So. 173)

## FIRST NAT. BANK OF DOTHAN v. ELBA HARDWARE & FURNITURE CO.

### 4 Div. 559.

Supreme Court of Alabama.

June 25, 1931.

Rehearing Granted Oct. 22, 1931.

Wilkerson & Brannen, of Troy, and W. M. Brunson, of Elba, for appellant.

J. C. Fleming and M. A. Owen, both of Elba, and M. S. Carmichael, of Montgomery, for appellee.

SAYRE, J.

Suit by appellant as assignee of a promissory note alleged in plaintiff's replication to be as follows:

"Elba, Alabama, January 12, 1929.
"State of Alabama, Coffee County:

"On the 12th day of July, 1929, I or we promise to pay to Elba Bank & Trust Company, or order, the sum of Fifteen Hundred Dollars at their office in Elba, Alabama, for value received, with interest from maturity and I or we agree to pay the cost of recording this instrument, together with reasonable attorney's fees and all other expenses incident to the foreclosure of the same, whether by suit or otherwise incurred in any man-

ner; and to secure," etc., and the further description of the note shows incorporated therein a mortgage of crops, live stock, and other personal property, and the following: "All or any of which property the mortgagee or assigns may after or before maturity hereof and with or without taking possession and for the payment thereof, sell as they may deem best," etc., and the further allegation of the replication is that plaintiff purchased the said note in good faith, for value, before maturity, in the ordinary course of trade, and without notice of the defense, etc.

The foregoing replication was pleaded in reply to several pleas which had set up the fact that plaintiff's assignor, the payee named in the note, was at and before the commencement of the action indebted to defendant in a sum in excess of the amount made payable by the note, and that, since the making of the note, said payee had become insolvent and gone into liquidation—this we state in brief. Demurrer to plaintiff's replication was sustained, and thereafter there were jury and verdict for defendant.

The question presented for decision is whether the note in suit, as shown by plaintiff's replication, was negotiable according to the law of negotiable instruments.

The fact that a mortgage is attached does not destroy the negotiability of the note. Sandlin v. Maury National Bank, 210 Ala. 349, 98 So. 190; Singer v. National Bond & Investment Co., 218 Ala. 375, 118 So. 561.

The fact that the mortgage attached to the note, otherwise negotiable, secures also an indebtedness other than that represented by the note, does not render the note nonnegotiable. Federal Land Bank v. Corinth Bank, 214 Ala. 146, 107 So. 88.

The fact that a mortgage is attached to a promissory note authorizing the payee to take and apply on the indebtedness, prior to maturity, property conveyed by the mortgage, does not destroy the negotiability of the note. Louisville Banking Co. v. Gray, 123 Ala. 251, 26 So. 205, 82 Am. St. Rep. 120. And, in general, we quote the following apt statement from F. & M. Bank v. Davies, 144 La. 532, 80 So. 713, 715: "Wherever the additional stipulations are merely in aid of the collection of the note, and do not constitute an undertaking to give or do something else foreign to that end, they do not destroy negotiability." They render "neither the amount, the time of payment, the payee, nor the engagement to pay, uncertain." Daniel Negot. Inst. (6th Ed.) vol. 1, p. 67. Stipulations of the mortgage incorporated into the note and providing means for the collection thereof in the event its due date passes without payment do not change the fact that the note is negotiable within the meaning of the decision in Louisville Banking Co. v. Gray, su-

pra, announced by this court more than thirty years ago. There are cases in other jurisdictions holding to the contrary; but the opinion here and now is that the precedent of our cases should be followed. Nor did the Acts of 1907, p. 660, entitled an act to define and regulate negotiable instruments, affect the question here in hand. Rather, that act, in keeping with the decisions to which we refer, enlarged the negotiability of paper in the general class with this.

To the same effect in general is the decision in Ex parte Bledsoe, 180 Ala. 586, 61 So. 813.

The trial court held the note in suit to be nonnegotiable, and therein, according to the previous decisions of this court, committed reversible error.

Reversed and remanded.

All the Justices concur, except BROWN, J., who dissents.

BROWN, J. (dissenting).

The note sued on, and set out in hæc verba in plaintiff's replication, to which the demurrer was sustained, is in words as follows:

"Elba, Alabama, January 12th, 1929.
"State of Alabama, Coffee County.

"On the 12th day of July, 1929, I or we promise to pay to Elba Bank & Trust Company, or order, the sum of Fifteen Hundred Dollars, at their office in Elba, Alabama, for value received, with interest from maturity and I or we agree to pay the cost of recording this instrument, together with reasonable attorney's fees and all other expenses incident to the collection of the same, whether by suit or otherwise incurred in any manner; and to secure the above note as well as all else I or we now or hereafter may owe to mortgagees before full payment hereof, I or we hereby grant, bargain, sell and convey to Elba Bank & Trust Company all our live stock and increase, all our household and kitchen furniture, all my or our gathered crops and provisions now on hand, also the following additional personal property: One Chevrolet 1928 Model Sedan; also all other personal property not herein specially named, owned by me or us now or at maturity of this paper. I or we also convey the entire crop raised by me or us or in which I or we may be interested during the years 1928, 1929, 1930, 1931, 1932 in Coffee County, Alabama, or elsewhere in Alabama, all rents and advances coming to me or us as landlord for each year. All or any of which property the mortgagee or assigns may after or before the maturity hereof and with or without taking possession and for the payment thereof, sell as they may deem best, and I or we agree that said sale may be made without producing the property at the place of sale and that the property may be sold in bulk or otherwise as the mortgagee or assigns may prefer, waiving all informalities and notice. I or we certify that all the property above conveyed is free from all lien and incumbrance whatsoever, and that it is my or our own; and as a further part of this contract I or we hereby waive all rights of exemption under the laws of Alabama as to all personalty and wages and as to homestead in lands, as to the collection of all that is due or may become due under this instrument. It is agreed that any and all payment may first be applied to such excess as may be due on this paper at any time. It is further agreed that any payments may be first applied to liquidation of any former amounts that may have been due to mortgagees before the execution of this paper. If mortgagees have to litigate with any other parties in any way for the recovery of any property or its value that is conveyed in this mortgage we agree to pay every expense they incur in any way and manner as well as attorneys' fees for carrying on said litigation. And whether this mortgage be foreclosed under the power of sale herein conferred, or by a bill or cross-bill in a court of equity, or in any manner whatsoever, the mortgagee or assignee shall have the right to employ an attorney to foreclose in such manner as the mortgagee or assignee may decide upon, and it is agreed that a reasonable attorney's fee for such foreclosure of not less than ten per cent. of the mortgage debt shall be paid by the undersigned as part of the debt hereby secured. *We also further agree to hold all fertilizers and supplies bought for us in trust as the property of said mortgages and subject to their order.* At any sale under this paper the mortgagees or their assigns may bid and become the purchasers of any property sold and we hereby severally waive presentment, protest and notice of protest and as we sureties or endorsers, consent that time of payment may be extended without notice thereof to us. We also agree to pay all collector's fees and his cost of collecting any amount due under this paper. We certify we are of age and eligible to sign this contract, and it is further expressly agreed that the said Elba Bank & Trust Company does not warrant the health, life, soundness or working qualities of any property this day sold or traded to the undersigned. *I or we agree that should there be an error or mistake in the amount claimed by the mortgagee or assignee to be due under this instrument, or whether such error or mistake exists or not, that before I or we file suit to correct same, or for an accounting and redemption, I or we shall first give the mortgagee or his assignee ten days' notice in writing; and the giving of such notice shall be a condition precedent to the filing of such suit; and I or we hereby appoint the Cashier, President, or Manager, or other person serving as cashier, president or manager of the mortgagee, or assignee, at*

*the time said notice is given, as my or our attorney in fact, and authorize such person to examine and audit the account or obligation secured by this instrument for the purpose of correcting any error or errors in said account or obligation, and ascertaining the correct amount legally due by changing the amount of advances made to me or us and eight per cent. per annum thereon as interest, and crediting on the debt all proper credits according to the rule of partial payments and it is agreed that the amount so ascertained by said attorney in fact shall be the true and lawful amount of the debt secured by this instrument, which shall be paid as a condition to redemption,* and in addition thereto a reasonable attorney's fee, as herein provided, and all court costs; and it is further agreed that any suit based upon or growing out of this instrument or any renewal thereof shall be tried by a judge of a court of equity, and that any suit brought to enforce this instrument may be brought in a court at Elba, Alabama, at the option of the mortgagee or assignee. If at any time the mortgagee or assignee deems best to do so, either may, in person or by agent or attorney, enter upon the premises and cultivate, gather and market the crops herein mortgaged, and apply the proceeds, less expenses to the mortgage debt. [Italics supplied.]

"Witness my or our hands and seals, on the day first above written.

"Elba Hardware & Furniture Co.,
"By H. B. Ham, General Manager."

Section 9033 of the Code provides: "An instrument which contains an order *or promise to do an act in addition to the payment of money is not negotiable.*"

To hold that the promises embraced in said note indicated by italics do not render it non-negotiable is to disregard the plain positive provisions of this statute. See Brannen's Negotiable Instruments Law (4th Ed.) § 5, pp. 60–63.

In my judgment the cases cited in the prevailing opinion do not militate against this view, and the facts of said cases clearly differentiate them from the case at bar.

The note in question, not only embodies a promise other than the payment of money, but on its face concedes that it may be subject to error in the amount promised to be paid; it does not evidence a promise to pay a sum certain. Code of 1923, § 9030.

I am therefore of opinion that the demurrers to the replication were properly sustained, and therefore respectfully dissent.

### On Rehearing.

**PER CURIAM.**

On the original consideration of this case the court was of opinion that none of the stipulations embraced in the instrument sued on, and pleaded in haec verba in the plaintiff's replications to the defendant's special plea, destroyed its character as a negotiable note.

On more mature consideration, the opinion prevails that the following stipulation: "I or we agree that should there be an error or mistake in the amount claimed by the mortgagee or assignee to be due under this instrument, or whether such error or mistake exists or not, that before I or we file suit to correct same, or for an accounting and redemption, I or we shall first give the mortgagee or his assignee ten days' notice in writing; and the giving of such notice shall be a condition precedent to the filing of such suit; and I or we hereby appoint the cashier, president or manager, or other person serving as cashier, president or manager of the mortgagee, or assignee, at the time said notice is given, as my or our attorney in fact, and authorize such person to examine and audit the account or obligation secured by this instrument for the purpose of correcting any error or errors in said account or obligation, and ascertaining the correct amount legally due by changing the amount of advances made to me or us and eight per cent. per annum thereon as interest, and crediting on the debt all proper credits according to the rule of partial payments, and it is agreed that the amount so ascertained by said attorney in fact shall be the true and lawful amount of the debt secured by this instrument, which shall be paid as a condition to redemption"—confers on the maker the right to a re-examination of the transaction between the parties to the end of ascertaining the amount due and payable, and therefore it is not an unconditional promise to pay a sum certain. This destroys its character as a commercial paper. Code 1923, § 9029; Des Moines Savings Bank v. Arthur, 163 Iowa, 205, 143 N. W. 556, Ann. Cas. 1916C, 498; Brooke v. Struthers, 110 Mich. 562, 68 N. W. 272, 35 L. R. A. 536.

The note dealt with in Louisville Banking Company v. Gray et al., supra, at the time of its execution was an unconditional promise to pay a sum certain, to wit, $500, and there was no provision in the note that affected its then character, and it was held in that case that the fact that it contained a stipulation authorizing the payee bank to apply deposits of the maker as payment before or after maturity did not alter the fact that the note at its maturity was an unconditional promise to pay a sum certain.

The case at bar is easily differentiated from that. Here the stipulation conferred the right on the maker to require a re-examination of the transaction between the parties to ascertain the sum due regardless of the amount first stated in the note. This right inheres on the note itself.

The rehearing is therefore granted, the judgment of reversal set aside, and the judgment of the circuit court affirmed.

Affirmed.

All the Justices concur, except SAYRE, J., not sitting.